Case number 15104, Cheryl Lynn Miner v. Commissioner of Social Security. Arguments not to exceed 15 minutes per side. Mr. Glada for the appellant. Thank you, Your Honor. Ronald D. Glada representing Cheryl Miner. I reserve five minutes. I want to thank you for allowing this oral argument. These cases are not considered very glamorous. By implication, at least in what happened in the district court, they're considered undesirable. But I consider this some of the most important work that an attorney can do, making the system more humane. The commissioner argues that the only question before you is the number of hours my office spent in terms of representing Cheryl Miner. That is not the law. Citing Johnson v. Georgia, the district court acknowledged that there are 12 criteria to be considered. That's on I.D. 1422. I'm not going to belabor all 12 criteria. The question of individual hours expended is difficult to assess. I would point out that if I'm fast and really good, then I get a good result, the same amount should be paid by the government. If I'm slow and not really good and get a good result, the same amount should be paid by the government. The flyspecking of hours doesn't solve the problem. There are certain points that are beyond dispute. The hours were expended over a long period of time without any compensation. Cheryl Miner endured years of deprivation unjustifiably. There was a 73% reduction in the number of hours, the most graphic being I was supposed to spend three-fourths of an hour studying a book, looking over it, doing it. If I'm able to do that, I'm brilliant. But that's not the point. I couldn't do it, I'll tell you right off the bat. Finally... I'm wondering if there's a background issue and maybe I'm missing it. We're all clear, aren't we, that this is not double payment that is being requested. The question is, who's going to pay Ms. Miner's fee? Is Ms. Miner going to pay it out of her benefits or is the government going to pay it? Is that correct? Correct. That was the next thing I was going to say. When was the Equal Access to Justice Act enacted? Do you know what year? I don't, I do not. It was 20, at least over 20 years ago. That's when the maximum, presumptively, was 125 an hour. Right, many, many years ago. Right, and that's all the court allowed you, was 125 an hour. Even though we presented evidence, the cost of living, all of that evidence. Is that adjusted, though, annually? No, it has never been adjusted that I know of. Tell us why you think the Michigan State Bar Report is a good basis for increasing the hourly rate. Well, because what they did is they looked at all of the evidence as to how you practice law and they looked at the different costs that individuals have, attorney fees costs, and they provided to the court the fact that $125 an hour is no longer applicable. And so, therefore, it would have been useful, at least, to have increased it. There's one point I do want to make. The District Court ordered the $35,323.25. That's a stark difference. In terms, the same amount of hours was spent by my office, the same level of skill was spent, and the same result was spent. Very rarely... Also under the same Hensley standards? Right. Everything is the same, except Sheryl has to pay $35,323.25. But that also takes into account the agreement between you and your... It does. It does, but it also takes into account, as the court said, when they ordered that payment, the level of skill that was brought to it, the result that was brought to it, and the hours that were spent. The court said you're entitled to the maximum 25% of her... Right, because of the result I obtained. In other words, that is exactly the same standard for what the government has to pay. Ultimately, you've got to show, though, an abuse of discretion by the District Court in order for us to remand, right? Right. And what I was going to say is, it's almost like a double blind study in science. It's automatically abuse of discretion where you have the same standard, and the government pays $8,000, and Sheryl pays $35,000. It's against the whole concept of EJIP, which is the Individual Unjustifiably Denied Benefits, to the government, which unjustly denied the benefits. That's what EJIP is about, shifting the cost of the burden of attorney fees. And so what happened here is in direct conflict with that purpose. You're saying if the government didn't allow... Or if the court didn't allow you the same $35,000, roughly, in the EJIP, that's an abuse of discretion? Is that your position? No, I don't understand. Well, I mean, if the court... Are you saying, well, to avoid an abuse of discretion, the court should have given you a recovery of the full amount you got as the 25% fee? Yes. No, Sheryl Miner should have gotten that. That's what I'm saying. Right. Sheryl Miner should not have carried the burden of this litigation. If the court had given you $25,000, given her $25,000 under the EAJA, would that be an abuse of discretion? Well, that's where it gets... The point I made is it's a 73% reduction in hours, and it's a tremendous reduction in terms of how much the government pays versus what Sheryl pays. As it gets closer and closer, it's harder to see abuse of discretion. But we're not at that point. That's not this case. There was an abuse of discretion almost on its face. When you see the difference between what the... Where they're trying to shift burden, EAJA, from Sheryl to the government... Do you have any case that supports your position that say a 73% reduction, in fact, is an abuse of discretion? No, but I had one which I cited where it was 10% versus 5%, and the court said it was abuse of discretion. This is 73%. To the ALJs... I'm sorry, to the magistrate judges who do this, do they routinely stick to the $125,000? Yes, but the Sixth Circuit has said you have to look beyond that, and they've actually said you can look at cost of living, you can... But they... There's another aspect to that, answering that question. I think it's important to understand that they routinely don't really analyze these cases. If we hadn't gotten to the Sixth Circuit and had a really good analysis of this case, Sheryl Miner would be getting nothing, and that's routine, and they routinely then don't shift the burden of the litigation. So if you look at routine... That's why I said it's almost like these cases are undesirable. They're not glamorous, they're not important, but they are important. This is exactly how we make this system more humane. It's exactly the reason EJA was passed. Do you think the Western District of Michigan, or you think this is systemic about the Sixth Circuit? Well, I can only speak to the Eastern District and the Western District, and the problem is the Eastern District and the Western District, and if you look at the statistics, you'll see that. Basically, reducing the hours of any single activity by an attorney is very subjective, let's put it that way. For instance... But they can do it if they explain it. Yeah, if they explain it. How do you explain I'm supposed to look over a 900-page transcript in three-fourths of an hour? How do you explain that I'm not supposed to spend three hours looking over a 39-page decision, and studying it, and understanding it, because that's what I'm supposed to do. I'm going to have to understand how the court's supposed to look at these cases, not how the district court and the magistrate judge look at these cases. How can you explain that three hours is too much? I don't see it. Well, the question is, for our purposes of review, is did the court explain? Or did the court just... No, they did not. They just said three-fourths of an hour, an hour. You know, they didn't say it could have been... Well, the one explanation they There was easy law here. There was no study required. Well, wait a minute. Why did you decide it that way then, if it was such a simple case? If the law was clear, if the facts were clear, why did you deny it? Maybe you didn't study it enough. It had to be remanded, right? It did. It wasn't obvious what the That's the point I'm making. How can it be not of use of discretion when you're saying something that doesn't make any sense? Oops, I've run out of time. I'm sorry. Thank you. I got going and I didn't notice the yellow line. May it please the court. Megan O'Callaghan on behalf of the Commissioner of Social Security. I'd like to start by addressing an issue that was brought up concerning when the EJU was enacted, what its rate was, and whether that rate had changed. When the EJU was enacted in the 1980s, the original rate was $75 an hour. Congress has amended that rate in the 1990s to $125 an hour. That rate has not changed since then. It's been about 20 years, roughly. It's been about 20 years. I believe it was 1996, but I could look to get the exact date. There's been a little bit of inflation in the last 20 years, hasn't there? There has been inflation in the last 20 years. However, this court has repeatedly held that the fact that the cost of discretion in limiting the hourly rate awarded to the statutory cap of $125 an hour. That's in Bryant. Hasn't this court also said that a state bar review's report is acceptable to delineate what hours should be? Yes, it is acceptable and it may be used. However, this court did not require that it be used or mandate that it provided sufficient evidence. Indeed, in August 2014, in Gay, this court found there was no abuse of discretion where the district court limited the rate to $125 an hour, where plaintiff hadn't satisfied his burden of proving that an upward adjustment. There has been no holding. The question is, if we say a state bar report is an acceptable method of establishing the appropriate rate, doesn't the court that refused to accept that rate have to give us an explanation of why for purposes of our review? If I may, it's an abuse of discretion, so the court found that it wasn't a sufficient explanation. Notably, this particular state bar review doesn't drill down to the Social Security rates. Divides by public benefits work. Yeah, I thought this was for public benefits attorneys in 2010 had a median hourly rate of $200 an hour. Now, why did the district court reject that or not explain why then in light of that, which is drilled down to public benefits attorneys? The court found that it wasn't a basis for an upwards award. It found that it wasn't a sufficient explanation. But the question to you is, what explanation did the court offer for making that determination? I'm not finding one. Correct me if I'm wrong. Yes, hold on just one moment, please. And while I'm looking for this, I would like to note that in at least the Michigan, there is currently a debate as to whether or not the bar is sufficient. The bar review of attorney rates is sufficient. And well, in Gonker, we said that it was right. In which case, Your Honor, it got gonkered. I think it's gonker. We said that it was an acceptable. It's my understanding that that case, the bar... Gonker. It was used in that case to look for paralegal rates and not attorney rates. And it was also an acceptable method, not that it was the required method. Well, our question is whether we've said that's an acceptable method to look at. So the answer to that is yes. Yes, it's an acceptable method, but there's nothing requiring that it be accepted. I think the law requires though, doesn't Hensley require that there be some explanation so we can have a reasonable appellate review. And if the district court doesn't give a reasonable explanation of why it didn't accept the Michigan things, or why it didn't accept the hours submitted, or why it unilaterally cut the hours in specific instances, if we have no basis, don't we have to remand? Well, here, let's... We started with rate, and you've expressed concerns about the explanation for rate. If we turn to hours, the explanation for hours is exceedingly clear. The court went through each of the hours requested and explained why the reduction was appropriate. The court stated a reason without an explanation, which may be fine in some cases where it's apparent, yeah, that makes sense. But some of these, I mean, I think they're bizarre, honestly. It's almost like there was a desire to just cut everything as low as possible. I mean... The court certainly didn't cut everything. Indeed, if you look at the entries for conversations with plaintiff, those were awarded at the full rate. But the court explained and even provided reasons for its The plaintiff's counsel requested 3.5 hours to review defendant's answer. The answer was three pages, and the court explained that there was little of any substance in those three pages. There was nothing to constitute the 3.5 hours requested. The court noted that there were other hour entries where the entries predated by two months the actual occurrence of the event, specifically a review of defendant's response. Plaintiff's counsel indicated that that was performed in December of 2010, when that was actually submitted two months later in 2011. The court noted the EJIA request was 6.5 hours initially, an EJIA motion was filed. An amended EJIA motion was later filed with little changes, and an additional 23 hours was requested. The court found that 29 hours... Was that the additional attorney? Yes. So you had six hours originally requested for the primary attorney, and then an addition of hours for someone else who's also working on the case? Right, but for work performed after the initial motion was submitted, there's no, comparing the two motions, there was no basis for an additional 23 hours. The court found that... I'm struggling with the lack of explanation. I'm looking at the explanation that the magistrate judge gave and was accepted for a complaint. There had been three hours to prepare a complaint, and the court did say it's a two page complaint, there's a financial affidavit, pauper forms, and a number of exhibits, and then the court just says, I recommend half an hour. It's been probably six years since I practiced. I cannot fathom creating any complaint in half an hour. Can you? It would depend on the complaint. The complaints I see in these cases are often three paragraphs, with those paragraphs being identical in cases. There's no change in the allegations. But what ends up written into the complaint, even a short one, grows from the basis of work and investigation that a counsel does, in order to determine whether what are perhaps routine to you, fit the facts of the case in which that counsel is involved. I'm struggling with this because it seems to me that an attorney owes his or her client a duty of appropriate representation, and to understand and analyze all the issues, and to raise them. Because if they don't raise them, the court below and this court is going to say, You missed this opportunity. So, I guess I would like a reasoned conversation about what this order entails. How could someone in your office have reviewed a 900-page administrative transcript in 45 minutes? You bring up a very important point in that. It is not to review it in its entirety. It is to re-review it. Counsel represented plaintiffs in the underlying administrative proceedings. Those work done at the administrative proceedings are not compensable under the EJUD. So, what the judge did was say that it will not compensate duplicative efforts. It will not compensate for things that have already been done. So, counsel was familiar with this case, familiar with the record. In a 900-page transcript from which you need to draw issues to argue on appeal, and you need to cite or explain what those issues are and how they were held, is it your position that you would automatically remember the 7 days of trial testimony and be able to immediately review them in 45 minutes and know exactly where the issues are raised? I just don't think that addresses the practicality of the practice of law. Your Honor, while we or you or someone may disagree with the court, the question is whether the court had a factual basis. No, the question is whether the court explained its factual basis. And here it did. It found that it was unfair to award time for duplicative efforts, for work that had already been done. This is not a case where there are new issues, there are new… But I guess I'm kind of back to the practical issue. And you practice? Yes. You understand the practicalities? I try a case for a week. A year goes by. Six months goes by. It's time to write the appellate brief on it. I go back and I flyspeck that trial transcript because it's the only way I can write an appropriate appeal. That takes a lot of time. I don't see an explanation that indicates to me that the court considered or even explained that. Because I understand he can't get paid for the administrative work, but when I try a case and when I come back in to file an appeal, it's not the administrative work I'm doing. It's drawing from an extensive transcript to understand how to muster my arguments and argue them to the appellate court. How is that replication? The court here found that it was and explained that that was its reasoning. What's the basis of that reasoning? It's clear that we disagree as to how much time would be needed to re-review and re-do efforts. The court found that it was duplicative and it shouldn't be awarded. It shouldn't be charged to the government in any event. But that is one entry in many that sort of isolates the numerous, numerous reasons the court provided for reducing the hours. Even if we were to find that he should have been awarded the full nine hours for review of the transcript, that doesn't erase the other reasons and the other explanations provided by the court. Help me with the explanation of 11 different orders, letters, and motions came in and the recommendation was to reduce this to 30 minutes to review those orders, letters, and motions. That's less than three minutes per document. I didn't see an explanation that would say why that is an adequate amount of time. What is your understanding of the basis of that? It's just sort of the factual nature. The court was familiar with what those orders were. Those were its orders and it found that three minutes was sufficient. Often they are confirming the docket change, confirming the dates, and I can see that it would take three minutes or in total 30 minutes to put that on the calendar, to forward it to a secretary for docketing. The court looked at the facts, at its own records, its own orders, and found that that time was sufficient. The question is has it explained it sufficiently so that we can evaluate whether that was a reasonable determination or not, and that I believe is what Judge Strantz is getting at. Yes, we understand, okay, we're not going to reduce it to 30 minutes, but the district court or the magistrate judge did not explain that these were just routine, they were half-page orders, there's nothing in the record that I see that explains that. How can we do a meaningful review? Or do we just have to take at face value whatever the magistrate judge decided? Well, the magistrate judge's reasoning and explanation is to be afforded substantial deference. As this court has recognized, they are intimately familiar with the facts of this case, and that is why it is an abusive discretion standard, and that's why they're given substantial deference. So unless we see a clear error in their reasoning... Or unless there's a failure to offer reasoning in our estimation, correct? There may be some differences to whether or not you believe the explanation is adequate. There are cases where a simple explanation of excessive has been found sufficient. So if you're going to increase that articulation standard, that's sort of a different issue. But the district court is to be given substantial deference in their understanding of the facts and basis. Counsel talked about sort of this chilling effect this 73% reduction would have. That is not the case. In recent cases in the Western District of Michigan, counsel for an underlying case, so where counsel here was awarded 31 hours, counsels have been awarded 22.9 hours in Thompson, 16.6 hours in Sorenson, and 18.05 in Shellman. There's going to be no chilling effect in this case. The court was intimately familiar with the type of case. I see that my time has expired, if I may proceed. Then how do you justify the amount that's authorized for her to pay? So there are two different provisions, and counsel conflates the two. There's the fee-shifting Egypt petition, and then there's also 406B, which allows for contingency fees. It allows for the court to recognize and acknowledge and to provide an award consistent with the fee arrangement reached by the parties. The Supreme Court in Gessbrecht v. Varnhart acknowledged and looked at that specific difference. It noted that directly contrary to plaintiff's position here, that percentage of award is not determinative, is not a basis for the aegis. Rather, the aegis looks at hours expended and hourly rate. But both use Hensley, don't they? Both look to the Hensley factors. Both look to Hensley. However, the court in these two situations is providing different gatekeeper roles. In the aegis, the court is the gatekeeper in making sure that the hours are reasonable, that there was a prevailing party, that there was no substantial justification. In the 406B arena, the court serves as a different gatekeeper and only looks to whether there was improper or ineffective assistance or whether there was a windfall. In this case, the district court found that even at 61 hours, at a rate of $579 an hour, there was no windfall. So the court went through its gatekeeper functions, which are separate and distinct for each compensatory scheme for attorneys fees for Social Security work. Thank you. First, in terms of we're going to look at abuse of discretion, we have to look at the decision as a whole. At every level, in every way, the court refused to accept standards that would ordinarily be accepted. For instance, they refused to accept the state board, the bar association's analysis. They refused to look at a cost-of-living adjustment. And then they fly-spec'd the hours in a way that was obviously impossible to have done. And the most important part of all this, in the contingency fee case, they looked at the result. In ordering the government, they did not look at the result. They did not say that the result then must accrue an attorney fee of a consistent amount. I thought it was interesting that counsel listed the hours for cases before the Western District. And I'm very shocked by that and very worried by that. Sixteen hours to do an appeal before the Western District. Nine hours to do an appeal before the Western District. Come on. What we're doing, if that's what they're doing, we're looking for inadequate representation. That's what they're doing. They're saying, okay, you can do this. That's why I said it's treated as if it's an undesirable case. Now, let's assume that. . . Part of the issue is that cases differ, right? Well, I understand. I'm not sure how you can make an assessment of a case that had a one-day hearing versus a case that went on for seven days or a case in which there's no question that the government's position was not substantially justified and one in which the government either admits that or, on the alternative, does not admit that there was substantial justification. So, in effect, it's apples to oranges. Right. I agree. But 16 hours, let's go on. Let's go back to this transcript. The purpose of reviewing the transcript is really not duplicative at all because what you're doing is you're preparing, based on the transcript that has been prepared, a brief with citations, analysis, et cetera. That's what you're doing when you go over that transcript. You're not thinking, well, I tried to. . . I asked this question, and I got this answer. I've still got to go through the transcript and find the citation and make sure that's the answer that I got. And did it say exactly what I remember? Well, you know, there's no way in the world that I can do that simply by my memory. Well, first of all, I couldn't cite to it. I couldn't tell the judge. I remember asking that question. But you build the time separately, right, a certain amount of time for going over the transcript and a certain amount of time for the brief? Yes, exactly, because you can't write the brief until you've spent a considerable amount of time. Really, in many ways, page by page. I mean, what you do is you go to the administrative law judge decision, you read that very carefully, and then you go to the transcript to see the extent to which it's accepted. And if you look at the decision by the Sixth Circuit, that was the very thing that was missing by the district judge in terms of looking at the relationship between the transcript and the decision that was made by the commissioner. But I want to emphasize that it's at every level that the money was spent, every level. I mean, the money was denied. The government didn't have to pay. And there is a relationship between what Cheryl Miner has to pay and what the government has to pay, because the government admits that this was an unjustifiable action. And therefore, you have to look at why would she pay this huge amount of money and the government pays such a small amount. It's not justifiable to have her carry that burden alone. I'm not sure I buy that. I think Ms. O'Callaghan had a good point that the standard's a little different. The standard is different. But it is. A better argument may be that there hadn't been sufficient explanation by the district court of the reduction in the fees as opposed to trying to justify the contingency fees. Well, at every level there hadn't been an addition. It's not just the hours. It's not just the state bar. It's not just the fact that they didn't look at the result. It's at every point there is a reduction. And I still would just assert that this is a shifting of fees. This is what the purpose of EJ is. And so if you look at it in that sense, it's very important. Thank you. Thank you.